UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| SHANISE N. MORRIS, | Case No. 20-CV-0604 (PJS/HB) |
| Plaintiff, | |
| v. | ORDER |
| EXPERIAN INFORMATION SOLUTIONS, INC. and TRANS UNION, LLC, | |
| Defendants. | |

David A. Chami and Dawn McCraw, PRICE LAW GROUP APC; Douglas Weimerskirch, HOGLUND, CHWIALKOWSKI, & MROZIK, PLLC, for plaintiff.

Adam Wiers and Cory Carone, JONES DAY; Gregory Myers, LOCKRIDGE GRINDAL NAUEN P.L.L.P., for defendant Experian Information Solutions, Inc.

Katherine Carlton Robinson, SCHUCKIT & ASSOCIATES, P.C., for defendant Trans Union, LLC.

Plaintiff Shanise Morris brings this action under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., alleging that defendants Experian Information Solutions, Inc. ("Experian") and Trans Union, LLC ("Trans Union") failed to "follow reasonable procedures to assure maximum possible accuracy" of the information in her credit report. 15 U.S.C. § 1681e(b). This matter is before the Court on Experian's motion to dismiss and Trans Union's motion for judgment on the pleadings. For the reasons that follow, defendants' motions are denied.

I.  BACKGROUND

In May 2019, Morris filed a voluntary Chapter 7 bankruptcy petition, and she was discharged on August 6, 2019.  Compl. ¶¶ 11-12.  Among the debts listed in Schedule F of her petition was a $2,703 debt to Comenity Bank.  Compl. ¶ 23.  Following her discharge, Morris obtained consumer credit reports from Experian and Trans Union, both of which are "consumer reporting agencies" ("CRAs") within the meaning of the FCRA.  Compl. ¶¶ 6, 8, 14, 16; *see* 15 U.S.C. § 1681a(f).

The Experian report, dated September 15, 2019, included an "ADS/COMENITY/KAY JEWELERS" tradeline under the heading "Your accounts that may be considered negative."  Myers Decl. ¶ 3 & Ex. A at 1–2 (September 15, 2019 Experian Credit Report).  The account's status is reported as closed in October 2018 with the comments "Account closed at consumer's request" and "Purchased by another lender."  Compl. ¶¶ 14, 17; Myers Decl. Ex. A at 2.  The report provides a September 2018 "Account Balance" of $2,702 and, under "Recent balance," states "Not reported."  Myers Decl. Ex. A at 2.[1]  The report also lists Morris's August 2019 Chapter 7 bankruptcy discharge and reports all of her other bankruptcy debts as discharged.  Compl. ¶¶ 24, 27.

---

[1] Morris alleges that the report lists an "Actual Balance" of $2,702, Compl. ¶ 17, but the legend on the report indicates that "AB" means "Account Balance."  Myers Decl. Ex. A at 2.

The Trans Union report, dated November 8, 2019, included a "COMENITYBANK/KAY JEWELERS" tradeline under the heading "Adverse Accounts." ECF No. 45-1 at 4–5.[2] The report states that the account was purchased from Kay Jewelers. ECF No. 45-1 at 5. The "Pay Status" is listed as "Charged Off" with an "Original Charge-off" in October 2018 of $2,702 and "Payment Received" of $0. Compl. ¶ 21; ECF No. 45-1 at 5. The report further states that the account was closed in January 2018 and includes codes indicating that the account was closed by the consumer and purchased by another creditor. ECF No. 45-1 at 4–5. Like the Experian report, the Trans Union report also lists Morris's August 2019 Chapter 7 bankruptcy discharge and reports all of her other bankruptcy debts as discharged. Compl. ¶¶ 26–27.

Morris alleges that both of these reports are inaccurate. She alleges that, because Experian and Trans Union knew that Morris had received a bankruptcy discharge and were reporting all of her other bankruptcy debts as discharged, they should also have reported the disputed Comenity account as discharged in bankruptcy with a zero balance.[3] Compl. ¶¶ 18, 22, 24, 26–27. Morris alleges that, as a result of defendants'

---

[2]The Court cites the page numbers generated by the Court's electronic docketing system that appear on the top right of the page.

[3]For ease of reference, the Court refers to this as the "Comenity account," although, as noted, more than one entity is listed as associated with the account.

alleged FCRA violations, she has been denied credit several times and obtained credit at less favorable rates. Compl. ¶ 33. She also alleges that she has suffered stress, anxiety, embarrassment, and other emotional distress. Compl. ¶¶ 29, 31, 38.

## II. ANALYSIS

### A. Standard of Review

Motions for judgment on the pleadings under Fed. R. Civ. P. 12(c) are assessed under the same standards as motions to dismiss under Fed. R. Civ. P. 12(b)(6). *Ashley Cty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). In reviewing a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *York v. Wellmark, Inc.*, 965 F.3d 633, 638 (8th Cir. 2020). Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570.

Ordinarily, if the parties present, and the court considers, matters outside of the pleadings, a Rule 12(b)(6) motion must be treated as a motion for summary judgment. Fed. R. Civ. P. 12(d). But the court may consider materials that are necessarily embraced by the complaint as well as any exhibits attached to the complaint without converting the motion into one for summary judgment. *Mattes v. ABC Plastics, Inc.*, 323

F.3d 695, 697 n.4 (8th Cir. 2003).  In this case, the Court considers the allegedly inaccurate credit reports, which are embraced by the complaint, and whose authenticity is not in dispute.

### B.  15 U.S.C. § 1681e(b)

Morris brings a claim under 15 U.S.C. § 1681e(b), which provides:

> Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

To prevail on a claim under § 1681e(b), a plaintiff must show that the CRA failed to "follow reasonable procedures to assure maximum possible accuracy" and that this failure caused inaccurate information to appear on her credit report.  *See Hauser v. Equifax, Inc.*, 602 F.2d 811, 814-15 (8th Cir. 1979).  Information that is technically correct may nevertheless be considered inaccurate if it is misleading.  *See Taylor v. Tenant Tracker, Inc.*, 710 F.3d 824, 827 n.2 (8th Cir. 2013) ("We do not agree with the district court that the 'technical accuracy' standard endorsed in *Wilson v. Rental Research Services, Inc.*, Civ. No. 3–96–820 (D. Minn. Nov. 10, 1997), states the law of this circuit."); *see also Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890, 895 (5th Cir. 1998) ("A credit entry may be 'inaccurate' within the meaning of the statute either because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions."); *Koropoulos v. Credit Bureau, Inc.*, 734 F.2d

37, 40 (D.C. Cir. 1984) ("Certainly reports containing factually correct information that nonetheless mislead their readers are neither maximally accurate nor fair to the consumer who is the subject of the reports.").

As noted, Morris alleges that the CRAs' reporting of her Comenity account was inaccurate and that, because the CRAs knew that she had obtained a Chapter 7 bankruptcy discharge, the "reasonable procedure[] to assure maximum possible accuracy" would have been to report *all* her unsecured debts—including the Comenity debt—as discharged in bankruptcy. To support her argument that such a procedure would be reasonable, Morris points to the settlement reached in *White v. Experian Information Solutions, Inc.*, No. SA CV 05-1070 DOC (C.D. Cal. Aug. 19, 2008). *See* Weimerskirch Decl. ¶ 3 & Ex. A. In that settlement, both Experian and Trans Union essentially agreed that, when they learn that a consumer has received a Chapter 7 bankruptcy discharge, they will assume that all of the consumer's unsecured debts were discharged in that bankruptcy and update the reporting of those debts accordingly, unless they are notified otherwise.

Defendants argue that Morris's claim fails as a matter of law because she did not notify them of the alleged inaccuracy or take any other steps to remedy it. Notifying the CRA of an inaccuracy is not a prerequisite to asserting a claim under § 1681e(b), however. Defendants point to cases holding that a CRA cannot be held liable under

-6-

§ 1681e(b) for reporting information unless it had notice that the source of the information may be unreliable.  *See, e.g.*, *Henson v. CSC Credit Servs.*, 29 F.3d 280, 285 (7th Cir. 1994) ("as a matter of law, a credit reporting agency is not liable under the FCRA for reporting inaccurate information obtained from a court's Judgment Docket, absent prior notice from the consumer that the information may be inaccurate").  Defendants read too much into those cases, however.  Those cases do not require the *plaintiff* to provide notice in every § 1681e(b) case, but merely hold that, unless a CRA has reason to doubt the reliability of a source of information, the CRA acts reasonably in relying on that source and does not have to independently investigate the accuracy of the source's information.

Here, however, Morris alleges that the CRAs acted unreasonably given the information that was already in their possession.  Specifically, Morris alleges that the CRAs knew that she had obtained a Chapter 7 discharge and, as the *White* settlement makes clear, the CRAs knew that unsecured consumer debts such as the Comenity account are typically discharged in Chapter 7 proceedings.  Morever, the *White* settlement itself provides notice that not updating such accounts after a Chapter 7 bankruptcy may fail to comport with § 1681e(b). The Court therefore rejects the CRAs' argument that, because Morris did not notify them of the error or otherwise seek to correct the reports before filing suit, her § 1681e(b) claim fails as a matter of law.

The CRAs next argue that their reporting of the Comenity account was accurate. This is a more difficult issue.

The Court finds plausible Morris's claim that if a CRA reports that a consumer owes an unsecured debt to a particular creditor as of the date on which the consumer files for Chapter 7 bankruptcy, and if the CRA learns that the consumer later received a bankruptcy discharge, then § 1681e(b) requires the CRA to report that debt as having been discharged in bankruptcy unless the CRA receives information to the contrary. It is, of course, possible that the debt was not discharged in the bankruptcy proceeding, but that is highly unlikely. The issue is the reasonableness of assumptions—of the default rules applied by the CRAs.[4] Morris plausibly alleges that it is not reasonable for a CRA to assume that unsecured debts were *not* discharged in a Chapter 7 bankruptcy unless the CRA learns that they were; Morris plausibly argues that, instead, § 1681e(b) requires CRAs to assume that unsecured debts *were* discharged in a Chapter 7 bankruptcy unless the CRA learns that they were not.

The situation is different when, prior to the date on which the consumer files for Chapter 7 bankruptcy, a creditor reports that the consumer no longer owes money to

---

[4]For this reason, the Court rejects Experian's argument that Morris's claim should be dismissed because it would force CRAs to scour bankruptcy dockets and draw legal conclusions. This is not to say that Morris's proposed procedure is reasonable as a matter of law, but merely that she has stated a plausible claim that the CRAs' failure to adopt her proposed procedure is unreasonable.

it—because, for example, the creditor closed the account and sold the debt to someone else. As long as the credit report is clear that the consumer did not owe a debt to the creditor at the time that she filed for bankruptcy, § 1681e(b) does not require the CRA to report that the debt formerly owed to the creditor was discharged in bankruptcy. That, in fact, would be *inaccurate*, as a non-existent debt cannot be discharged in bankruptcy. Reporting that the consumer ceased to owe a debt to a particular creditor prior to filing for bankruptcy implies nothing about whether she owed that debt to someone else when she filed for bankruptcy, and certainly does not imply that she continued to owe that debt to someone else even after being discharged.

In the Court's view, then, the question of whether Morris has plausibly pleaded an FCRA violation comes down to whether the credit reports unambiguously communicate that the debt reported on the challenged tradelines did not exist on the date that Morris filed for Chapter 7 bankruptcy. More specifically, if the reports unambiguously indicate that whatever interest the particular creditors had in the debt was sold before Morris's bankruptcy, the Court would agree that Morris has failed to state a claim. Having carefully perused the reports, however, the Court finds that Morris has a plausible claim that they are ambiguous.

With respect to the Experian report: Experian argues that it was not required to report the Comenity debt as discharged in bankruptcy because:

> Comenity closed and sold the account seven months before the bankruptcy. . . . To the extent any of the debts once held by Comenity exist, they belong to some other creditor. Plaintiff did not owe Comenity any money when she filed for Bankruptcy, so there were no debts to discharge as to Comenity.

ECF No. 50 at 2-3 (footnote omitted). If what Experian says would be clear to someone in the industry reading Morris's credit report, then the Court will enter judgment for Experian on Morris's claim. But the Court does not have before it evidence about how someone in the industry would interpret the challenged tradeline, and the Court (an admittedly unsophisticated reader of credit reports) finds the tradeline to be ambiguous.

As described above, the challenged tradeline is not merely listed under "Comenity" but under "ADS/COMENITY/KAY JEWELERS." Myers Decl. Ex. A at 2. The tradeline also says that the account was "Purchased by another lender," that the account is closed, and that no recent balance has been reported. *Id.* Because the report lists three different entities on the account and does not identify either the seller or the purchaser of the debt, the report is unclear as to whom the debt currently belongs and is also unclear as to who furnished information about the debt to Experian. Given this ambiguity, a plausible reading of the report is that one of the three listed entities purchased the debt from another of the three listed entities and still owns it. In addition, although the account is listed as closed, the most recent balance that it reports

was $2,702 in September 2018; the tradeline does not report a zero balance. At this early stage of the litigation—with no evidence as to how this report would be interpreted by someone in the industry—the Court finds that Morris has plausibly alleged that the tradeline might be interpreted to report that she currently owes an existing, undischarged debt to one of the listed entities.

With respect to the Trans Union report: Trans Union argues that its report is accurate because it reports the account as closed with a zero balance. Trans Union further contends that, under the *White* settlement, it is not required to change the reporting under these circumstances. *See* Weimerskirch Decl. Ex. A § 3.2(c)(i) (excluding revolving "Closed Account[s]" from the required prospective reporting changes); *id.* § 2.6 (defining "Closed Account" as an account reporting a zero balance and with "a narrative or other code indicating any of the following: . . . that the account has been closed by a consumer or creditor").[5]

That a report complies with the *White* settlement does not by itself establish that the report complies with § 1681e(b), however. After all, *White* is not binding on this Court. More importantly, as Morris points out, the Trans Union report says more than that the account is closed with a zero balance. It also says that the account's "Pay Status" is "Charged Off." A debt that is "charged off" still exists, and nothing prevents

---

[5]Experian also argues that its reporting of the Comenity account complies with the *White* settlement, but it plainly does not, as it does not report a zero balance.

the creditor from selling it or taking steps to collect it.  *See In re Belton v. GE Cap. Retail Bank*, 961 F.3d 612, 614 (2d Cir. 2020) (noting that reporting a debt as "charged off" indicates that "the debt was severely delinquent but still outstanding"); *Martin v. Equifax Info. Servs., LLC*, No. 4:19-CV-3691, 2020 WL 1904496, at *1 (S.D. Tex. Apr. 17, 2020) (noting that the plaintiff still owed a debt that was reported as charged off and closed); *Foster v. Santander Consumer USA, Inc.*, No. 1:18-CV-4146-WMR-JFK, 2019 WL 3490463, at *1, *10 (N.D. Ga. May 29, 2019) (defendant argued, and plaintiff conceded, that plaintiff still owed a debt that was reported as charged off and closed), *report and recommendation adopted*, No. 1:18-CV-4146-JPB, 2019 WL 8277254 (N.D. Ga. Oct. 15, 2019).

And like the Experian report, the Trans Union report is ambiguous concerning who owns the debt.  The account is labeled "COMENITYBANK/KAY JEWELERS" and states that the debt was "purchased from" Kay Jewelers.  This would be an odd phrase to use to convey the idea that some other, unidentified entity owns the debt; one would normally expect the purchaser, not the seller, to use the phrase "purchased from" to denominate the source of a debt that the purchaser owns.  In other words, a plausible reading of this language is that the phrase "purchased from" indicates that the reporting entity (presumably Comenity) purchased the account from Kay Jewelers and is reporting that Morris still owes Comenity an undischarged debt.

Because Morris has plausibly pleaded (1) that both the Experian and Trans Union credit reports could be read to report an existing, undischarged, pre-bankruptcy debt and (2) that defendants' failure to indicate that such debt was discharged in bankruptcy violates § 1681e(b), the Court denies defendants' motions.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT:

1. The motion of defendant Experian Information Solutions, Inc. to dismiss [ECF No. 24] is DENIED.

2. The motion of defendant Trans Union, LLC for judgment on the pleadings [ECF No. 43] is DENIED.

Dated: August 13, 2020     s/Patrick J. Schiltz
                          Patrick J. Schiltz
                          United States District Judge